**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES *ex rel.* KEDRON | ) | |
| JONES (#R30974), | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | Case No. 12 C 5465 |
| v. | ) | |
| | ) | |
| MARCUS HARDY, Warden, Stateville | ) | |
| Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner Kedron Jones' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(d). For the following reasons, the Court denies Jones' habeas petition and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**BACKGROUND**

Jones does not present clear and convincing evidence challenging the statement of facts in the last state court decisions to address his arguments on the merits, and thus the Court presumes those facts are correct for purposes of its habeas review. *See* 28 U.S.C. § 2254(e)(1); *Carter v. Thompson*, 690 F.3d 837, 839 (7th Cir. 2012). The Court therefore adopts the underlying facts as set forth by the Illinois Appellate Court in *People v. Jones,* No. 1-04-2088 (1st Dist. May 29, 2007) (unpublished) and *People v. Jones,* No. 1-09-0938 (1st Dist. July 22, 2011) (unpublished).

I.      **Factual Background**

A.      **Motion to Suppress**

While in police custody in April 2000, Jones gave a videotaped statement.  Before his jury trial, Jones moved to suppress his statement and quash his arrest for the following reasons: (1) he made the statement after being unlawfully arrested without probable cause; (2) he made the statement after being detained for more than forty-eight hours without a probable cause hearing; and (3) the statement was involuntary.  At the hearing on the motion to suppress, Detective Demosthenes Balodimas testified that he had been notified around 8 a.m. on April 21, 2000, that an individual named Ronald Pollard, who had been arrested on a drug offense, had information about the murder of Arthur Hill.  Pollard told Detective Balodimas that a man named "Kenneth Jones," also known as "Red" or "Red Dog," had said that he committed a robbery and had shot a person in the head.  In addition, Pollard described Jones' appearance, identified his residence, and mentioned people that the police officers might find at Jones' apartment building.  When the police officers arrived at Jones' apartment, he identified himself as "Kedron Jones" and said his nickname was "Red."  Information known to the police officers about the crime corroborated Pollard's statements.

Also at the suppression hearing, several other police officers, including Detective Randy Troche, testified about Jones' arrest and detention, including that they advised him of his *Miranda* rights before he made his videotaped statement.  Further, four police officers and two Cook County Assistant State's Attorneys testified that they never physically abused Jones, never saw anyone physically abuse Jones, and never heard Jones mention any physical abuse or injury.  Also, the police officers and Assistant State's Attorneys consistently testified that Jones never

asked for an attorney. The State played Jones' videotaped statement at the suppression hearing, including Jones stating that the police had treated him fairly.

On the other hand, Jones testified at the suppression hearing that the officers did not advise him of his *Miranda* rights until the seventh time he interacted with the officers. He also stated that he asked for an attorney at least six times. Finally, he testified that the police officers slapped him in the face, pounded him in the back, bent his arm, stomped his groin against a steel bench, stuck a gun to his mouth, and threatened to kill him and make it look like an escape attempt. In rebuttal, Officer Patrick Learnahan testified that he was working at the police station lock-up on April 22, 2000 and that he did not see any visible injuries on Jones nor did Jones complain of any injuries.

Meanwhile, Jones' counsel intended to introduce documents of Jones' groin injury, but Cermak Hospital had lost the documents. As such, the parties stipulated that Cermak Hospital could not locate the relevant documents. Jones' counsel, however, did not call any treating physicians at the suppression hearing to testify about Jones' groin injury.

After the hearing, a Circuit Court of Cook County judge denied Jones' motion to suppress finding that Pollard's tip was fully corroborated by other evidence, and thus the police officers had sufficient probable cause to arrest Jones. The judge also concluded that there was no credible evidence that Jones invoked his right to counsel. Also, based on witness testimony, the photographs in evidence, and Jones' demeanor in his videotaped statement, the trial judge concluded that there was no credible evidence of any physical abuse.

### B.    Trial

At the 2004 jury trial, the State presented eleven witnesses, including Detective Balodimas.  The States' primary evidence, however, was Jones' videotaped statement.  In his statement, Jones explained that Pollard and he had planned to commit an armed robbery of a drug dealer and that in furtherance of their plan they arranged to get a gun from Jones' son, Kendron Jones, III.  Jones explained that he, his son, Pollard, and another man known as Hawk drove two vehicles to the Pavilion apartment complex where Pollard was going to rob the drug dealer.  Both cars parked in the back of the parking lot at the apartment complex.  Pollard then took the gun into the apartment building alone.  When Pollard returned to the parking lot, he dropped the gun in Kendron Jones, III's car and then entered his own car.  Both vehicles left immediately.  While counting the money, Pollard informed Jones that he had robbed a convenience store in the apartment building and had shot the clerk.

After driving a few miles, Jones pulled over and gave his son $500 from the robbery proceeds at which time he told his son that Pollard had robbed a convenience store and shot the clerk.  Jones also told his son to get rid of the gun.  Pollard and Jones then purchased crack cocaine with the robbery proceeds and returned to Jones' apartment at the Viceroy Hotel.  Jones also stated that his son called him and he told his son to get rid of the gun and to stop calling him.  Before Pollard left the apartment, Pollard's and Jones' girlfriends shaved Pollard's head and facial hair.

Physical evidence presented at trial corroborated Jones' statement, including a pair of clippers that police seized during a search of Jones' apartment.  Also, the parties stipulated that phone calls had been made from the lobby of Jones' building to Kendron Jones III's phone on

4

the night of the crimes and the following day.  Pollard's girlfriend testified at trial further corroborating Jones' custodial statement.  Jones did not testify or present any witnesses at trial. The jury returned a guilty verdict and the trial court sentenced Jones to 35 years in prison for murder and 15 years for robbery to be served consecutively.

## II.    Procedural Background

Jones appealed his conviction and sentence to the Illinois Appellate Court arguing that: (1) the trial court erred in denying the motion to suppress his custodial statement because the police arrested and detained him without probable cause in violation of the Fourth Amendment; (2) the trial court erred in denying the motion to suppress his custodial statement because police officers detained him for more than sixty hours without a probable cause hearing in violation of the Fourth Amendment; (3) the trial court erred in denying his motion to suppress because his custodial statement was involuntary; (4) his trial counsel was constitutionally ineffective because she did not move to suppress the introduction of hair clippers seized during an allegedly non-consensual search of Jones' apartment; and (5) he was denied a fair trial because the State explained the doctrine of criminal accountability by analogizing Jones' conduct to that of a domestic terrorist.  On May 29, 2007, the Illinois Appellate Court affirmed Jones' conviction and sentence.

Jones then filed a petition for leave to appeal ("PLA") in the Supreme Court of Illinois raising the following claims: (1) the trial court erred in denying his motion to suppress his custodial statement because the police arrested and detained him without probable cause in violation of the Fourth Amendment; (2) the trial court erred in denying his motion to suppress his custodial statement because police officers detained him for more than sixty hours without a

probable cause hearing in violation of the Fourth Amendment; and (3) his trial counsel was ineffective because she did not move to suppress the introduction of hair clippers seized during an allegedly non-consensual search of Jones' apartment. Thereafter, the Supreme Court of Illinois denied Jones' PLA. Jones then filed a petition to the United States Supreme Court for a writ of certiorari that the Supreme Court denied on June 23, 2008.

Jones filed a post-conviction petition pursuant to 725 ILCS 5/122-1, *et seq.*, in the Circuit Court of Cook County raising the following claims: (1) he was denied his right to due process because the State relied upon a false tip during grand jury proceedings; (2) his trial counsel was ineffective because (a) counsel did not object to the use of Pollard's tip at the grand jury proceedings, (b) counsel did not object to the State's reliance on Pollard's tip to demonstrate probable cause, did not introduce evidence that the tip was false, or cross-examine Pollard, and (c) trial counsel did not call Dr. Angalate, a doctor who treated Jones, at the suppression hearing; (3) appellate counsel was constitutionally ineffective; (4) the State withheld exculpatory information in violation of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (5) he was actually innocent of the crimes for which he was convicted.

The trial court dismissed Jones' post-conviction petition as frivolous and patently without merit. On appeal to the Illinois Appellate Court, Jones raised the following claims: (1) the State withheld exculpatory information in violation of *Brady*; and (2) trial counsel was ineffective for withdrawing Jones' pro se motion to suppress and failing to call Dr. Angalate at the suppression hearing. Jones filed a PLA with the Supreme Court of Illinois raising the following ineffective assistance of trial counsel claims: (1) his trial counsel failed to investigate the contents of his pro se motion to suppress; and (2) trial counsel did not introduce the testimony of Dr. Angalate at the

suppression hearing.  The Supreme Court of Illinois denied Jones' post-conviction PLA on May 2, 2012.

### III.    Habeas Petition

On July 12, 2012, Jones filed the present pro se habeas petition and on January 17, 2013, he filed his reply brief.  Construing his pro se allegations liberally, *see Gomez v. Randle*, 680 F.3d 859, 864-65 (7th Cir. 2012), Jones brings the following claims: (1) the trial court erred in denying his motion to suppress his custodial statement because the police arrested and detained him without probable cause in violation of the Fourth Amendment; (2) the trial court erred in denying his motion to suppress his custodial statement because the police detained him for more than sixty hours without a probable cause hearing in violation of the Fourth Amendment; (3) the trial court erred in denying his motion to suppress because his custodial statement was involuntary; (4) his trial counsel was constitutionally ineffective because (a) trial counsel did not object to the introduction of Pollard's tip at the grand jury proceedings, (b) trial counsel did not object to the State's reliance on Pollard's tip to demonstrate probable cause, introduce evidence that Pollard's tip was false, or cross-examine Pollard, (c) trial counsel did not call Dr. Angalate at the suppression hearing, and (d) trial counsel did not move to suppress the introduction of the hair clippers found during a search of his apartment; (5) he was denied a fair trial because the State explained the doctrine of criminal accountability by analogizing petitioner's conduct to that of a domestic terrorist; (6) he was denied his right to due process because the State relied upon a false tip during grand jury proceedings; (7) the State withheld exculpatory information in violation of *Brady*; and (8) he is actually innocent of the crimes for which he was convicted.

## LEGAL STANDARDS

### I.     Habeas Relief

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), habeas

relief cannot be granted unless the state court's decision was contrary to, or an unreasonable

application of federal law clearly established by the Supreme Court.  *See Williams v. Taylor,* 529

U.S. 362, 402-03, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); *Resendez v. Smith,* 692 F.3d 623,

626 (7th Cir. 2012).  In *Williams*, the Supreme Court explained that a state court's decision is

"contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion

opposite to that reached by this Court on a question of law" or "if the state court confronts facts

that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a

result opposite to ours."  *Williams,* 529 U.S. at 405.

Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner

must demonstrate that although the state court identified the correct legal rule, it unreasonably

applied the controlling law to the facts of the case.  *See Williams,* 529 U.S. at 407; *Coleman v.*

*Hardy,* 690 F.3d 811, 814 (7th Cir. 2012).  "The state court's application of federal law must not

only be incorrect, but 'objectively unreasonable.'"  *Rann v. Atchison,* 689 F.3d 832, 835 (7th Cir.

2012); *see also Williams*, 529 U.S. at 410 ("*unreasonable* application of federal law is different

from an *incorrect* application of federal law") (emphasis in original); *Wood v. Allen,* 558 U.S.

290, 130 S.Ct. 841, 849, 175 L.Ed.2d 738 (2010) (state court's factual finding not unreasonable

"merely because the federal habeas court would have reached a different conclusion in the first

instance.").  To be considered objectively unreasonable, a state court's decision must be "well

outside the boundaries of permissible differences of opinion."  *Carter,* 690 F.3d at 843 (citation

omitted). In other words, to be reasonable, the state court's decision must be "at least minimally consistent with the facts and circumstances of the case." *Hall v. Zenk,* 692 F.3d 793, 798 (7th Cir. 2012) (citation omitted).

## II.     Exhaustion and Procedural Default

"A state petitioner seeking a writ of habeas corpus in federal court must first exhaust the remedies available to him in state court, 28 U.S.C. § 2254(b)(1)(A), 'thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Cheeks v. Gaetz,* 571 F.3d 680, 685 (7th Cir. 2009) (citations omitted). In particular, a habeas petitioner must fully and fairly present his federal claims through one full round of state court review before he files his federal habeas petition. *See O'Sullivan v. Boerckel,* 526 U.S. 838, 845, 848, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Mulero v. Thompson,* 668 F.3d 529, 536 (7th Cir. 2012). "[W]hen a petitioner has exhausted his state court remedies and failed to properly assert his federal claims at each level of review those claims are procedurally defaulted." *Woods v. Schwartz,* 589 F.3d 368, 373 (7th Cir. 2009). A claim is also procedurally defaulted "when a petitioner fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Cone v. Bell*, 556 U.S. 449, 465, 129 S.Ct. 1769, 173 L.Ed.2d 701 (2009). Procedural default precludes federal court review of a petitioner's habeas claims. *See Mulero,* 668 F.3d at 536.

A habeas petitioner may overcome procedural default by demonstrating cause for the default and actual prejudice or by showing that the Court's failure to consider the claim would result in a fundamental miscarriage of justice. *See House v. Bell,* 547 U.S. 518, 536, 126 S.Ct.

2064, 165 L.Ed.2d 1 (2006); *Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115

L.Ed.2d 640 (1991). The Supreme Court defines cause sufficient to excuse procedural default as

"some objective factor external to the defense" which prevents a petitioner from pursuing his

constitutional claim in state court. *See Murray v. Carrier,* 477 U.S. 478, 492, 106 S.Ct. 2639, 91

L.Ed.2d 397 (1986); *Smith v. McKee,* 598 F.3d 374, 382 (7th Cir. 2010). Prejudice means actual

prejudice infecting the "entire trial with error of constitutional dimensions." *Murray*, 477 U.S. at

494 (citation omitted). A fundamental miscarriage of justice occurs when a habeas petitioner

establishes that "a constitutional violation has probably resulted in the conviction of one who is

actually innocent." *Id.* at 496.

## ANALYSIS

### I.       Procedurally Defaulted Claims

Jones has procedurally defaulted many of his habeas claims because he did not fully and

fairly present them through one full round of state court review. *See Boerckel,* 526 U.S. at 845,

848; *Mulero,* 668 F.3d at 536. Jones has procedurally defaulted the following claims because

although he raised them to the Illinois Appellate Court on direct appeal, he did not raise them in

his PLA to the Supreme Court of Illinois: (1) that his custodial statement should have been

suppressed because it was involuntary; and (2) he was denied a fair trial because the State

explained the doctrine of criminal accountability by analogizing Jones' conduct to that of a

domestic terrorist. Similarly, Jones raised his *Brady* claim in his post-conviction petition and on

appeal, but did not include this claim in his post-conviction PLA. Also in his post-conviction

petition, Jones raised the claim that trial counsel was ineffective for failing to: (1) object to the

use of Pollard's tip at the grand jury proceedings; (2)  introduce evidence that Pollard's tip was

false; and (3) cross-examine Pollard, but did not raise these arguments to the Illinois Appellate Court or in his post-conviction PLA to the Supreme Court of Illinois. Likewise, Jones set forth his claim that he was denied his due process rights because the State relied on Pollard's tip at the grand jury proceedings in his post-conviction petition, but he did not raise this claim on appeal or in his post-conviction PLA.

Jones has not sufficiently argued or supported the cause and prejudice exception to procedural default, especially because his post-conviction counsel's alleged mistakes cannot constitute cause. *See Coleman*, 501 U.S. at 753 (attorney ignorance or inadvertence does not furnish cause to excuse procedural default). Moreover, although an ineffective assistance of counsel claim can constitute cause to set aside a procedural default, *see Promotor v. Pollard,* 628 F.3d 878, 887-88 (7th Cir. 2010), Jones' ineffective assistance of counsel claims are without merit, as discussed in detail below.

Jones, however, brings a habeas claim that he is actually innocence. As the Supreme Court teaches "'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993).[1] In other words, the "fundamental miscarriage of justice exception" concerns actual innocence and provides a gateway for the Court to review the merits of Jones' procedurally defaulted claims. *See id.; Coleman v. Hardy,* 628 F.3d 314, 318-19 (7th Cir. 2010). "The

---

[1] Unlike federal habeas claims, Illinois courts recognize actual innocence claims as free standing claims based on the Illinois Constitution. *See People v. Washington,* 171 Ill.2d 475, 489, 216 Ill.Dec. 773, 665 N.E.2d 1330 (Ill. 1996).

fundamental miscarriage of justice exception requires 'the habeas petitioner to show that a

constitutional violation has probably resulted in the conviction of one who is actually innocent.

To establish the requisite probability, the petitioner must show that it is more likely than not that

no reasonable juror would have convicted him in the light of the new evidence.'" *Smith,* 598

F.3d at 387-88 (quoting *Schlup v. Delo,* 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808

(1995)). A habeas petitioner must support his actual innocence allegations "with new reliable

evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or

critical physical evidence – that was not presented at trial." *Schlup,* 513 U.S. at 324; *see also*

*Coleman,* 628 F.3d at 319. "To demonstrate innocence so convincingly that no reasonable jury

could convict, a prisoner must have documentary, biological (DNA), or other powerful evidence:

perhaps some non-relative who placed him out of the city, with credit card slips, photographs,

and phone logs to back up the claim." *Hayes v. Battaglia,* 403 F.3d 935, 938 (7th Cir. 2005).

Because this type of evidence is unavailable in the vast majority of cases, actual innocence

claims are rarely successful. *See Schlup,* 513 U.S. at 324; *Smith,* 598 F.3d at 387-88.

       After reviewing the voluminous records filed by the State and Jones' habeas petition and

detailed reply brief, Jones has not supported his actual innocence claim with new reliable

evidence that was not presented at trial. Instead, Jones maintains that surveillance videos of the

crime scene – although admitted into evidence at trial – should have been admitted at his

suppression hearing. First, the surveillance videos are not new evidence under the *Schlup*

definition because the videotapes were presented at trial through the testimony of the apartment

building complex's operations manager Martin McMeill. *See Morales v. Johnson*, 659 F.3d 588,

605 (7th Cir. 2011). Moreover, whether any such evidence was presented at Jones' suppression

hearing does not affect the actual innocence calculus because the standard involves a

probabilistic determination of what reasonable, properly instructed jurors would do, *see House,*

547 U.S. at 538, not what the trial court would do at a suppression hearing.  Similarly, Jones

maintains that a "community alert" with Pollard's picture on it that was issued on April 12, 2000,

is new evidence in support of his actual innocence claim, yet Jones does not explain how in light

of this community alert featuring Pollard, it is more likely than not that no reasonable juror

would find him guilty, *see Morales,* 649 F.3d at 605, especially because Jones was tried under

the theory of accountability.

Because Jones has not provided the Court with any "new reliable evidence – whether it

be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence

– that was not presented at trial," *see Schlup,* 513 U.S. at 324, Jones' claim of actual innocence

does not except his procedurally defaulted claims.  As such, the Court cannot review the merits

of Jones' procedurally defaulted claims because Jones has failed to establish cause and prejudice

or the fundamental miscarriage of justice exception.  *See Mulero,* 668 F.3d at 536.  In addition,

the Court denies Jones' actual innocence habeas claim because it is not cognizable on habeas

review.

## II.     Fourth Amendment Claims

Jones brings two Fourth Amendment claims in his habeas petition that he did not

procedurally default, including:  (1) the trial court erred in denying his motion to suppress his

custodial statement because he was arrested and detained without probable cause in violation of

the Fourth Amendment; and (2) the trial court erred in denying his motion to suppress his

custodial statement because police detained him for more than sixty hours without a probable

cause hearing in violation of the Fourth Amendment.  Because Jones had an opportunity for full

and fair litigation of these issues in the Illinois courts, these habeas claims are foreclosed by

*Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).

To clarify, the Supreme Court in *Stone* held that when a "State has provided an

opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not

require that a state prisoner be granted federal habeas relief on the ground that evidence obtained

in an unconstitutional search and seizure was introduced at the trial."  *See id.* at 482; *see also*

*Ben-Yisrayl v. Buss*, 540 F.3d 542, 552 (7th Cir. 2008).  Put differently, "*Stone v. Powell,* 428

U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), holds that federal courts hearing collateral

attacks under § 2254 may not enforce the exclusionary rule unless the state judiciary denied the

defendant a full and fair opportunity to contest the search or seizure."  *Hayes,* 403 F.3d at 939.

As the Seventh Circuit explains, "'full and fair' guarantees the right to present one's case, but it

does not guarantee a correct result."  *Cabrera v. Hinsley*, 324 F.3d 527, 532 (7th Cir. 2003).

Thus, "absent a subversion of the hearing process, [courts] will not examine whether the state

courts made the right decision."  *Ben-Yisrayl,* 540 F.3d at 552; *see also Watson v. Hulick,* 481

F.3d 537, 542 (7th Cir. 2007).

The State of Illinois provided Jones an opportunity for full and fair litigation of his

Fourth  Amendment claims as follows.  In Jones' motion to suppress, he argued that the trial

court should suppress his custodial statement because: (1) he made the statement after being

unlawfully arrested without probable cause; (2) he made the statement after being detained for

more than forty-eight hours without a probable cause hearing; and (3) his statement was

involuntary.  After conducting an extensive suppression hearing, the trial court concluded that

Pollard's tip was fully corroborated by other evidence, and thus the police officers had sufficient probable cause to arrest Jones. The trial court also concluded that there was no credible evidence that Jones had invoked his right to counsel. Also, based on witness testimony, the photographs in evidence, and Jones' demeanor in his videotaped statement, the judge concluded that there was no credible evidence of any physical abuse. On direct appeal, the Illinois Appellate Court provided a lengthy discussion of why Jones' statement was voluntary in tandem with Jones' claim that he did not have a probable cause hearing within forty-eight hours. *See People v. Willis,* 215 Ill.2d 517, 533-34, 294 Ill.Dec. 581, 831 N.E.2d 531 (2005) ("We have repeatedly held, both before and after *Gerstein* and *McLaughlin,* that such a delay remains a factor to consider in determining whether a confession was voluntary."). The Illinois Appellate Court also gave a detailed analysis of why there was probable cause to arrest Jones in the first instance.

Although Jones maintains he did not get a full and fair opportunity to litigate his Fourth Amendment claims, his arguments reveal that he disagrees with the Illinois courts' conclusions based on his view of the evidence. As the Seventh Circuit instructs "mistakes in a state court's treatment of a petitioner's Fourth Amendment claim are not sufficient, in and of themselves, to surmount the *Stone* bar." *Miranda v. Leibach,* 394 F.3d 984, 998 (7th Cir. 2005). Because Jones has not established any subversion of the state's hearing process, he is foreclosed from bringing his Fourth Amendment claims in this federal habeas proceeding under *Stone. See Ben-Yisrayl,* 540 F.3d at 552.

15

### III. Ineffective Assistance of Counsel

Next, Jones' ineffective assistance of counsel claims that he did not procedurally default include that his: (1) trial counsel was ineffective because she failed to move to suppress the hair clippers police found in his apartment; and (2) trial counsel was constitutionally ineffective for failing to call one of his treating physicians, Dr. Angalate, as a witness at his suppression hearing. *See Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish constitutionally ineffective assistance of trial counsel under the Sixth Amendment, Jones must show that (1) his trial attorney's performance "fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). If Jones fails to make a proper showing under one of the *Strickland* prongs, the Court need not consider the other. *See id.* at 697 ("In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant").

As to Jones' first ineffective assistance of counsel claim, the Illinois Appellate Court on direct appeal reasoned as follows:

> Defendant next argues that he received ineffective assistance of counsel when his attorney failed to file a motion to suppress the warrantless search of his apartment on April 25, 2000, that yielded hair clippers allegedly used to change Pollard's appearance. He claims that the police had his written consent to search his apartment on April 21, 2000, but the second search four days after was not authorized by his consent or a warrant. Defendant cites as authority cases where a first search was clearly authorized but a second search was not. The State argues that the second search was covered by defendant's written consent which did not limit the police to a single search.
>
> ....
>
> Here, defense counsel filed motions to quash defendant's arrest and

16

> suppress his confession on the theory that the police lacked probable cause to
> arrest defendant and that his confession was involuntary. Counsel was not
> ineffective for her strategic decision that a motion to suppress the confession on
> those grounds would be more persuasive to the judge and more beneficial to the
> defendant than a motion to suppress the hair clippers.

*People v. Jones,* No. 1-04-2088, at *18-20 (internal citations omitted).

The Illinois Appellate Court's decision as to the performance prong under *Strickland* is well within the boundaries of permissible differences of opinion. *See Ebert v. Gaetz,* 610 F.3d 404, 412 (7th Cir. 2010) (state court application of *Strickland* unreasonable "only when the state court's application of 'clearly established Federal law' is wholly outside the boundaries of permissible differences of opinion."). It is well-settled that a habeas court's review of defense counsel's performance is "highly deferential" and that Jones must "overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *See Strickland,* 466 U.S. at 689; *Mosley v. Atchison,* 689 F.3d 838, 847-48 (7th Cir. 2012). Here, trial counsel decided not to clutter the trial court with numerous suppression motions and brought the most important motions for Jones' defense, namely, she moved to suppress his custodial statement and quash his arrest. Her choice in not moving to suppress the hair clippers used to change Pollard's appearance – in light of all of the circumstances – was well within the wide range of professionally competent assistance. *See Strickland,* 466 U.S. at 690; *Mosley,* 680 F.3d at 858. Therefore, Jones' first ineffective assistance of trial counsel argument fails.

Next, Jones contends that his defense counsel was constitutionally ineffective for failing to call one of his treating physicians, Dr. Angalate, to testify about his groin injuries at the suppression hearing. As to this claim, the post-conviction Illinois Appellate Court stated:

> [C]ounsel's decision not to call ... Dr. Angalate as a witness at the hearing on the
> motion to suppress defendant's statements is a matter of trial strategy that is

17

> generally not subject to attack on the grounds of ineffectiveness of counsel.
> Counsel's decision benefits from a strong presumption that it was proper. After
> carefully examining the record, we find that defendant has failed to establish he
> was prejudiced by counsel's decision because he cannot show there is a
> reasonable probability that the outcome of the motion to suppress hearing or trial
> would have been different had it not been for this alleged error by his trial
> counsel.

*People v. Jones,* No. 1-09-0938, at 9-10 (internal citations omitted).

The Illinois Appellate Court's decision as to *Strickland's* prejudice prong is well within

the boundaries of permissible differences of opinion. *See Carter,* 690 F.3d at 843. Viewing the

totality of the evidence before the trial court, there was overwhelming evidence that Jones'

custodial statement was voluntary and not the result of police misconduct. *See Strickland,* 466

U.S. at 696; *Morgan v. Hardy,* 662 F.3d 790, 803 (7th Cir. 2011). In particular, at the

suppression hearing, the State presented witness testimony from various police officers and

assistant states attorneys, as well as photographs, establishing that there was no physical abuse.

The trial court also viewed Jones' custodial statement in which he stated that the police had

treated him fairly. Based on this evidence in the record, the Illinois Appellate Court's

conclusion that Jones was not prejudiced by counsel's failure to call his treating physician as a

witness at the suppression hearing was "at least minimally consistent with the facts and

circumstances of the case," and thus reasonable. *See Hall,* 692 F.3d at 798. Therefore, Jones'

habeas claim that his trial counsel was constitutionally ineffective for failing to call Dr. Angalate

at his suppression hearing is without merit.

## III. Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254

Proceedings, the "district court must issue or deny a certificate of appealability when it enters a

final order adverse to the applicant." Accordingly, the Court must determine whether to grant

Jones a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order. *See*

*Gonzalez v. Thaler,* ___ U.S. ___, 132 S.Ct. 641, 649 n.5, 181 L.Ed.2d 619 (2012).

 A habeas petitioner does not have the absolute right to appeal a district court's denial of

his habeas petition, instead, he must first request a certificate of appealability. *See Miller-El v.*

*Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 1039, 154 L.Ed.2d 931 (2003); *Lavin v. Rednour,*

641 F.3d 830, 832 (7th Cir. 2011). A habeas petitioner is entitled to a certificate of appealability

only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,*

537 U.S. at 336; *Narvaez v. United States,* 641 F.3d 877, 881 (7th Cir. 2011); 28 U.S.C. §

2253(c)(2). Under this standard, Jones must demonstrate that "reasonable jurists could debate

whether (or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were adequate to deserve encouragement to proceed further."

*Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146

L.Ed.2d 542 (2000)). In cases where a district court denies a habeas claim on procedural

grounds, a certificate of appealability should issue only if the petitioner shows that (1) jurists of

reason would find it debatable whether the petition states a valid claim of the denial of a

constitutional right, and (2) jurists of reason would find it debatable whether the district court

was correct in its procedural ruling. *See Slack,* 529 U.S. at 485.

 Here, jurists of reason would not debate the Court's conclusion that Jones procedurally

defaulted the following claims: (1) his due process claim based on the State reliance on Pollard's

tip at the grand jury proceedings; (2) that his custodial statement should have been suppressed

because it was involuntary; (3) that he was denied a fair trial because the State explained the

doctrine of criminal accountability by analogizing Jones' conduct to that of a domestic terrorist;
(4) his *Brady* claim; and (5) his ineffective assistance of counsel claims based on counsel's
failure to object to the use of Pollard's tip at the grand jury proceedings, failure to introduce
evidence that Pollard's tip was false, and failure to cross-examine Pollard.  Furthermore, jurists
of reason would not debate with the Court's conclusion that Jones did not establish an exception
to his procedural default.  Also, jurists of reason would not debate that the Illinois courts
provided an opportunity for full and fair litigation of his Fourth Amendment claims pursuant to
*Stone*.  Finally, reasonable jurists would not debate or disagree that Jones has failed to establish
that the Illinois Appellate Court unreasonably applied *Strickland* to the facts of his ineffective
assistance of counsel claims.  Therefore, the Court declines to certify any issues for appeal.  *See*
28 U.S.C. § 2253(c)(2).

## CONCLUSION

For these reasons, the Court denies Jones' petition for a writ of habeas corpus and
declines to certify any issues for appeal.  *See* 28 U.S.C. §§ 2253(c)(2), 2254(d).

**Dated:** January 28, 2013

ENTERED

AMY J. ST. EVE
**United States District Court Judge**

20